**NORTH KANSAS CITY DEVELOPMENT CO. et al. v. CHICAGO, B. & Q. R. CO. et al.**

**No. 12927.**

Circuit Court of Appeals, Eighth Circuit.

Feb. 8, 1945.

Rehearing Denied March 1, 1945.

Elton L. Marshall, of Kansas City, Mo. (Henry N. Ess, of Kansas City, Mo., and James S. Simrall, of Liberty, Mo., on the brief), for appellants.

Andrew C. Scott, of Chicago, Ill. (J. L. Rice, of Denver, Colo., W. S. Hogsett and J. C. James, both of Kansas City, Mo., and Walter McFarland and Eldon Martin, both of Chicago, Ill., on the brief), for appellees.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is from a final decree in a suit in equity to compel the Burlington railroad to disclose certain of its records, alleged to be probative on the issue of the amount of compensation the plaintiffs herein are entitled to receive for their interest in property being taken by the Burlington in pending condemnation proceedings. The form of the action as a bill for discovery is not questioned, Sinclair Refining Co. v. Jenkins Co., 289 U.S. 689, 53 S.Ct. 736, 77 L.Ed. 1449, 88 A.L.R. 496, and jurisdiction existed by reason of diversity of citizenship and the amount involved, but the court found upon the trial that "the data sought through discovery is not material on the issue of the damages in the condemnation suit," and dismissed the action.

It appears that the plaintiffs in this discovery action (referred to collectively as their relations among themselves are not here material) long since acquired and own a tract of land abutting upon the Burlington's railroad in Clay County, Missouri, across the river from Kansas City, Missouri. A part of the tract has been platted and laid out into parcels for industrial sites with alleys in between for railroad tracks to afford connection between the parcels and the Burlington railroad, and more than a hundred industries have ac-

quired sites and operate plants within the tract. The legal title to the alleys was retained in the tract owner but the right of ingress and egress was preserved to each industry and was assured by the contract of the tract owner to construct and operate, or cause to be constructed and operated, lead tracks and switch tracks connecting the industry with the Burlington railroad. In some instances the contracts specifically mentioned the Burlington and in some they did not, but there has never been and is no other railroad adjacent to the property except the Burlington, and all the railroad freight of the industries to and from the outside world passes over the Burlington. The tract owners acquired and laid the necessary railroad tracks in the alleys and contracted with the Burlington to furnish all the rolling stock for and to perform all the switching work. The Burlington has accordingly always serviced the industries. The contract is in the form of a terminable agreement according the use of the alley strips and trackage thereon to the Burlington under which the Burlington, in addition to performance of the service over the trackage, is also obligated to pay the tract owners the sum of $1 for each loaded car switched over it. The number of such cars so switched in 1942 was 44,609 and the total from 1923 to 1939 was 639,446.

The property within the tract which the Burlington is taking on condemnation consists of strips of land about 17 feet wide through the alleys carrying 19 lead tracks and 94 switch turnouts thereon, constituting the connecting links for ingress and egress between the Burlington and the industries on the tract. The issue as to the amount of compensation to be awarded the tract owners was tried to a jury, but the judgment rendered on the verdict was reversed on appeal in this court (8 Cir., 134 F.2d 142) and the condemnation case is now pending for new trial on the single issue of damages and awaits final adjudication upon the bill for discovery here before us.

On the former trial the tract owners introduced expert testimony to the effect that their interest in the alley strips connecting the industries with the Burlington was of very great value, measurable by capitalization of the annual revenue and estimated profit which the Burlington derived directly and indirectly from the carriage of freight shipped to and from the industries located on the tract. The Burlington operates some nine thousand miles of railroad of its own and connects with other railroads, and the annual railroad receipts for carriage of all the freight moved between the industries and their suppliers and customers in whole or in part by the Burlington doubtless amount to a large sum. By estimating the Burlington's profit and ascribing a fraction of it to the use of the alleys in the tract, and capitalizing the result, the experts arrived at a market value for the alleys of many millions of dollars. The reversal by this court of the resulting judgment for $835,000 was for errors in the admission of testimony to support the claimed damages. We declared the general rule, as quoted from the Missouri Supreme Court, that the market value of property taken in condemnation may not be determined by its value to the condemnor nor by the condemnor's necessity of acquiring it, and that such considerations must in no way be allowed to affect the jury's determination of the value, and we found that the attempts of the tract owners at capitalization [of profits], on figures derived from and applicable only to the Burlington's individual situation, which the trial court received as substantive evidence, were improper and compelled the reversal.

The voluminous writings in the possession of the Burlington of which the tract owners sought to compel discovery in this action, would show substantially the items of freight contained in the 44,609 cars switched to and from the industries on the tract in the year 1942, the origin, destination and freight rates, the parties to the commerce, the railroads the items were carried over, and the Burlington's direct and indirect receipts in respect to such items. It is not claimed that the writings would show the net profits accruing to the Burlington from its carriage and participation with other railroads in the carriage of the items of goods, but it is contended that they would upon analysis and relation to other factors, supply a basis for expert conclusion as to such net profits. Upon such conclusion being arrived at, the contention is that the experts could form an opinion on the basis of capitalization of what a railroad company in general, other than the Burlington, could earn from, and consequently would be willing to pay, for the interest of the tract owners in the alleys, and that such opinion would be competent on the issue of the market value of the interest

of the tract owners which is being condemned.

■ We are satisfied that the trial court was right in refusing to compel the Burlington to produce the data called for in the bill of discovery. It is clear that the interest in the alleys reserved to the tract owners when they sold the plant sites to the several industries did not include a right to levy tolls upon the expected carriage of the industries' freight by railroads beyond the borders of the industrial tract. The contracts accompanying the grants of the sites to the industries imposed upon the grantor the obligation to provide means to effectuate the ingress and egress to which the industries were entitled. That obligation was discharged by the construction of the tracks and the procurement of the Burlington (a utility restricted to reasonable charges) to service the plants. The only question in the condemnation is what is the full and fair market value of the interest being taken from the tract owners, and no measure for that can be sought in any capitalization of what the Burlington might make out of it. Quite aside from the fact that study of the desired Burlington records of particular traffic receipts in the war year 1942 could afford nothing more than a basis to speculate upon the Burlington's annual net profits from such traffic, there is the more fundamental consideration that if the exact annual profit attributable to the Burlington in respect to that traffic were known it would not help to determine the plaintiffs' damage.

■ The attempt therefore to get at the Burlington's 1942 records concerning its work and that of other railroads in carrying the freight of the industries throughout the world beyond the tract, and receipts in respect to that work, is but a continuation of the attempt which we held to be improper in our former opinion. It goes against the settled law that neither the gain to the condemnor nor the condemnor's necessity can in any way affect the award to the tract owners. They can recover only for what is taken from them. Their right is to show and to have considered only all the elements that go to make up the market value of their interest and to be fully compensated therefor.

The arguments in support of the bill of discovery are much elaborated, but we think the effect of the contentions is that the court should look upon the property in question here as a railroad—assimilable to what may be called a feeder railroad—the kind of a railroad which does not itself extend a great distance but mainly leads to other railroads. It is pointed out that such a railroad's traffic is an element of its value. It is also argued that the performance of such a railroad's function of gathering and distributing the freight upon its lines brings to it a sort of control of the traffic far beyond its lines. Though its shippers in and out have the right to designate the routings beyond the feeder line, in practice it is said they let the feeder lines do much of it. This is said to result in enhancement of the market value of the feeder railroad and to be an element of value of great importance when two or more main line railroads are in competition to acquire the feeder railroad. Bringing this line of argument to the situation here, the contention is that the interest of the tract owners in the alleys here should be deemed to include a traffic control over the industries' freight beyond the tract and so to justify the proposed investigation of the Burlington's business with that freight and with its profits. The theory is developed from different angles and ably presented, but we are satisfied that however expressed there always remains the same improper attempt to use the Burlington's gain to measure the property owners' loss.

It is evident that the tract is platted and laid out and owned as a real estate business with parcels of land for sale suitable for industries by reason of their proximity to and connection with the Burlington railroad. The appellants neither own nor operate a railroad so that they have no traffic to be appraised as an element of value and they have no sort of control over either the industries or the Burlington in respect to the carriage of freight outside the tract's borders. They are simply in like case with countless others who own land along the great railroad systems and must surrender it when required by law, not for what the railroad will gain by the taking, but for its market value.

Although appellants have no railroad and no traffic and no control of traffic, and their alleys lead nowhere except to the Burlington's railroad, still their theory implies their interest in the alleys is such that they could establish a railroad on the tract or confer the privilege on some railroad to operate there. Such railroad obviously could not get out of the tract because the Burlington extends along the

line of egress and it is not claimed that the mere switching the railroad could do in the tract would pay. But it might acquire connections with railroads other than, the Burlington through condemnation and construction of an over-pass across the Burlington, or possibly it could obtain Congressional authority and build a bridge across the Missouri river and obtain an exit in that way. Then it might become possessed of that amount of control of the routing of traffic which the industries (who have the right to control their routing) might let it have. And so the thought is that the controlling of distant traffic ought to be treated as an element of value to be appraised and paid for to the tract owners.

We are satisfied that any such basis for assessing damages here is speculative, contrary to reality and entirely unjustified. United States ex rel. and for Use of Tennessee Valley Authority v. Powelson, 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390.

It is urged, however, that the former decision of this court has established and settled as the law of the case that there is a railroad on the tract and that appellants' interest does include a valuable control or opportunity to control outside traffic which must be appraised and paid for to appellants, and that the Burlington's handling of the freight of the industries outside the tract must be considered in that appraisal.

We do not so understand the opinion. The former appeal brought up a record of two thousand pages and many questions were argued orally and in more than five hundred pages of briefs which have been examined. Our decision upon issues presented and passed on is binding unless clearly erroneous or in conflict with Supreme Court authority. But on the issue of the amount of damages, the Burlington in that appeal assigned as error and argued that the trial court had erred in receiving the testimony intended to show the Burlington's gains from its handling of the freight of the industries and that the evidence did not support the verdict. We sustained the assignments of error. In our discussion we stressed the fact that such testimony went only to show the gains individual to the Burlington because that was the record before us. We held that such gains individual to the Burlington could not measure the damage to these plaintiffs.

It appeared in the record, however, that the Burlington had for years paid the tract owners a dollar a loaded car for its use of the tracks in the area, pursuant to the lease contract above referred to. The Burlington owns a third of the stock in the plaintiff companies, and we did not make any gratuitous assumption that there is no basis for such disbursements. We did not foreclose that inquiry but held that the lease provisions were not conclusive on the amount of damages as against evidence of what the owner can fairly and reasonably receive as rental return. Those points were presented in the record before us and were so decided and they are concluded.

█ Our discussion did extend somewhat beyond the precise questions of the effect of the lease and of the competency and sufficiency of the evidence to sustain the verdict which were before us and which we were required to pass upon, and it was written before the decision of the Supreme Court in United States ex rel. v. Powelson, supra. That decision very clearly prohibits the basing of value in condemnation upon future possibilities of special use without reasonable probability of such use in a reasonably near future, or upon possible special use to be acquired in the future through eminent domain proceedings. Such bases are "too remote and speculative to have any legitimate effect upon the valuation", and such resultant values are not compensable.

When the present bill for discovery was tried, the trial court became convinced that as no other railroad touched the tract or could reach it except the Burlington, there was no other railroad that could use the alley property for its railroad purposes or to which the property could be rented. It could see no reasonable probability of any different situation in the reasonably near future. Therefore it held that any showing of the Burlington's gains would be merely individual to the Burlington and in no wise probative as to any other renter or user and therefore such showing would be incompetent as settled by this court. We do not consider that the opinion of this court defined or approved any plan or course of proof by which the appellants could on the new trial connect up the profits of the Burlington from its outside operations with the valuation of their interest in the tract. We do not find in our former opinion a holding or declara-

tion that there are other railroads which can now reach or rent or profitably use the alley tracks in their railroad operations, or that they can do either in the reasonably near future. There is no claim that appellants could now profitably use them itself so as to acquire any control of distant traffic. We do not think that the trial court failed in obedience to our mandate by its dismissal of the bill for discovery.

The present appeal affords no occasion to suggest their future course to appellants. They have on many occasions, through many years, declared the value of their property apparently without difficulty, and certainly without reference to Burlington earnings, and this opinion goes no further than to affirm the decree appealed from for the reasons stated.

Affirmed.